UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: Gregory Robinson and Valerie Robinson<br>           Debtors | ) ) ) ) | Chapter 13<br>Case No. 09-19117 |
| Gregory Robinson and Valerie Robinson<br>           Plaintiffs<br>v.<br>Nationstar Mortgage LLC;<br>Specialized Loan Servicing LLC;<br>And<br>Bank of New York Mellon fka the Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-01 Mortgage Pass Through Certificates Series<br>           Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding |

## VERIFIED COMPLAINT
## PRELIMINARY STATEMENT

This action is brought by Gregory Robinson and Valerie Robinson, the Plaintiffs (hereinafter, Plaintiffs or Debtors) against the Defendants Specialized Loan Servicing LLC, whose address is 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129 and Nationstar Mortgage LLC, whose address is 8950 Cypress Waters Blvd. Coppel, TX 75019 as the Servicers of the mortgage on the Plaintiff's residence held by the Bank of New York Mellon fka the Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-01 Mortgage Pass Through Certificates.

The third Defendant is The Bank of New York Mellon fka the Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-01 Mortgage Pass Through Certificates Series (henceforth referred to as the Bank of NY Mellon) Series whose address is 225 Liberty Street, New York, NY 10281, as the holder of the mortgage on the Plaintiff's home by an assignment by Mortgage Electronic Registration Systems Inc. as Nominee for Country Wide Home Loans, Inc. The original mortgagee was Countrywide Home Mortgages and the Bank of America purchased the mortgage from Countrywide Home Loans. The assignment was dated December 17, 2012 and recorded in the Norfolk County Registry of Deeds in Book 30821 page 384.

The Plaintiffs filed for relief under Chapter 13 of the United States Bankruptcy Code on September 25, 2009, the Docket is 09-19117.

Since the Plaintiffs filed the Chapter 13 case and continuing after the Discharge was entered on September 14, 2015; the Defendants have overcharged the Plaintiffs on the mortgage, failed to properly credit payments by the Plaintiffs to the mortgage account, falsely reported to the IRS the amount of interest the Plaintiffs paid in 2015, failed to object to the Plaintiff's motion for entry of discharge in the Chapter 13 case as required by 11 USC section 1328 and failed to give an accounting of any arrearage prior to the entry of discharge as required by 11 USC section 1328, then continued to harass the Plaintiffs by unfairly demanding the payment of the moneys that were not owed because they were paid pursuant to the Chapter 13 Plan and discharged by the Bankruptcy court.

## VENUE

1.) Venue is proper pursuant to 28 U.S.C. §§ 157 (b), 1334(b) and 1409(a) as well as under 11 U.S.C. § 105(a), whereby this Honorable Court has jurisdiction to issue any order or judgment necessary or appropriate to carry out the provisions of this title, including the Debtors' discharge. 11 USCA § 524(a); and the remaining claims are related to the Bankruptcy case.

## STATEMENT OF FACTS

2.) Debtors filed for the above referenced Chapter 13 case on September 25, 2009.

3.) The Debtors filed a motion for Authorization to Enter into a First Mortgage Loan Modification with the prior mortgagee, Bank of America (the mortgage has since been assigned to the Bank of New York Mellon fka the Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT, Inc. Alternative Loan Trust 2004-01 Mortgage Pass Through Certificates Series, the current mortgagee, henceforth referred to as the Bank of New York Mellon.

4.) The Bank of America received the Modification Agreement on June 21, 2010.

5.) The Court allowed the motion to approve the agreement on June 25, 2010.

6.) The Debtors filed a 4th Amended Chapter 13 Plan on July 10, 2010 which provided for direct payments of the mortgage to the Bank of America as holder of the first mortgage, the plan was later confirmed by the court.

7.) The Debtors' prepetition arrearage on the mortgage would be cured pursuant to the modification agreement and would not be paid through the Chapter 13 Plan.

8.) The interest rate on the mortgage would be reduced from 6.375% to 3.250% with an annual increase for the following three years beginning July 1, 2010, which would reduce the monthly mortgage payments.

9.) The mortgage payments for Principal and intersest under the modification were agreed to be as follows:

    i. 6/1/2010 $2445.00 beginning 7/1/2010

    ii. 6/1/2011 $2694.87 beginning 7/1/2011

    iii. 6/1/2012 $2948.34 beginning 7/1/2012

10.) In July of 2010 and the months that followed the debtors paid the Mortgagee outside the plan pursuant to the terms of the Modification Agreement and the Chapter 13 Plan.

11.) The mortgage statements the Debtors received from the mortgagee after July 2010 continued to reflect the pre-modification payment amounts.

12.) The debtors contacted the Bank of America about the incorrect Mortgage Statements and they were told to continue to make payments pursuant to the Modification Agreement.

13.) The Debtors made payments for 24 months pursuant to the Modification Agreement and the Bank of America continued to accept and process the payments.

14.) The Debtors made numerous calls to the mortgagee in an attempt to resolve the issues but never received a satisfactory explanation.

15.) The Debtors were told the individual who negotiated the modification no longer worked for the Bank of America and someone else would call them back to review the loan information.

16.) The Debtors never received a call back.

17.) Finally Debtor Greg Robinson spoke to a Remonia or Ramona at 800-306-6062 on December 15, 2014 and she told him the monthly payment was $3999.04 and the loan was in arrears by $87,978.00.

18.) On December 20, 2014 the debtors were notified that the loan would be serviced by Specialized Loan Servicing LLC.

19.) On December 28, 2014 the Debtors received notice of alleged amount owed on the mortgage which included $50,827.26 in uncollected interest and $10,885.25 in escrow balance advances.

20.) The Debtors' counsel at that time requested in writing on January 12, 2015, an explanation of the accounting of the Debtors' mortgage payments and the alleged arrearages.

21.) Although the Debtors' counsel explained the situation to an individual ("Teresa") in the Modification Department and counsel was assured that a detailed explanation regarding Debtors' first mortgage, including monthly payment, interest rate and mortgage payoff figure would be forthcoming, once the loan status was "updated and evaluated", he never received one.

22.) The Debtors' counsel filed a motion for an order compelling examination of the Creditor pursuant to Fed. R. Bankr. P. 2004 on March 4, 2015.

23.) The Court allowed the motion.

24.) The Debtors' counsel did receive an accounting from Specialized Loan Servicing LLC (SLS) on April 24, 2015 which claimed to be a record of the post-petition mortgage

payments received by Bank of America and SLS, indicating an amount due at that time of $24,882.61.

25.) Unfortunately the Debtors Attorney never pursued the examination.

26.) The Debtors filed the motion for entry of discharge on February 16, 2015.

27.) SLS and the Bank of New York Mellon, through their counsel both received notice of the Motion for entry of discharge.

28.) None of the Defendants objected to the motion for entry of discharge or alleged any arrearage pursuant to Fed. R. Bankr. P. 3002.1 (h) or provided an accounting for any alleged arrearage as required by Fed. R. Bankr. P. 3002.1 (h).

29.) The Court entered the order of discharge on September 4, 2015.

30.) Any claim of the Defendants for post-petition arrearage was discharged pursuant to 11 USC Section 1328.

31.) After the discharge SLS, without notice to the Court, immediately contacted the Plaintiffs and claimed an arrearage was owed on the mortgage and began to threaten foreclosure.

32.) On October 20, 2015 Valerie Robinson, the joint-Debtor called SLS to make a payment and was told the account was 360 days in arrears and SLS would not accept any payments unless the whole account was brought current.

33.) A notice date November 5, 2015 from SLS stated the mortgage was in arrears by $41,215.74 and the Debtors were required to pay the total past due by April 4, 2016 to avoid foreclosure.

34.) Martin A. Mooney, Esq. of 8 Thurlow Terrace, Albany, N.Y. 12203 had been representing SLS and he was trying to obtain an accounting from his client of the Loan payments.

35.) Attorney Mooney notified the Debtors' counsel that SLS was no longer servicing the loan and he would not be pursuing the accounting from SLS.

36.) The Bank of New York Mellon choose to have the Loan Serviced by Nationstar Mortgage.

37.) On December 31, 2015 Rob Bush of Nationstar Mortgage notified the Debtors that they were $37,055.00 in arrears.

38.) Nationstar was demanding another modification of the mortgage or payment of the arrears or they would foreclose on the mortgage.

39.) Nationstar as assignee of the Bank of New York Mellon began sending "inspectors" to inspect the Plaintiffs' residence on a monthly basis.

40.) The inspectors trespassed onto the Plaintiffs' property to take pictures which frightened and embarrassed the Plaintiffs.

41.) The Plaintiffs asked Rob Bush (an employee and/or agent of NationStar Mortgage, who was their "foreclosure specialist") about the inspections and he said the inspectors were there to make sure the property was occupied and if it appeared not to be occupied the inspectors were authorized to enter the dwelling and change the locks immediately, without court order.

42.) Because the Plaintiffs feared that if they left their home, the Defendants would come in and constructively evict them by changing the locks; they were too afraid to leave the home to visit Plaintiff Valerie Robinson's 90 year old mother in Alabama.

43.) The collection actions of Nationstars employees and/or agents caused the Plaintiffs a great deal of depression, anxiety and sleepless nights.

44.) The Plaintiff's suffered a loss because of the winter of 2015.

45.) Greg Robinson holds a construction supervisor's license issued by the Department of Public Safety for the Commonwealth of Massachusetts and he is authorized to repair the damage his residence suffered due to the harsh winter of 2015.

46.) The Debtors' put in a claim with their property insurance company who was and still is Arbela Insurance.

47.) The claim was allowed and Greg Robinson's construction company was authorized to do the work.

48.) When the work was done, Arbella Insurance inspected it and awarded Greg Robinson and Valerie Robinson and Specialized Loan Servicing LLC ISAOA/ATIMA a check dated November 4, 2015, in the amount of $23,115.47, as compensation for the loss.

49.) The Debtors offered to sign the whole amount over to NationStar mortgage as a partial cure of the arrears on the mortgage because they were so afraid of the pending foreclosure.

50.) Rob Bush of Nation Star mortgage refused the offer and accused Gregory Robinson of insurance fraud.

51.) The Debtors' current attorney sent NationStar and the Bank of NY Mellon Demand Letters pursuant to MGL Ch. 93A on February 9, 2016.

52.) None of the Defendants responded.

53.) After the letters were received Rob Bush as employee and/or agent for NationStar Mortgage then demanded that the Plaintiffs sign the check for $23,115.47 over to Nation Star.

54.) The Plaintiffs refused and they still hold the check.

## COUNT I

### Willful Violation of the Fair Debt Collection Practices Act

55.) The allegations of paragraphs 1-53 above are realleged incorporated herein by reference.

56.) Defendants violated the FDCPA, 15 U.S.C. § 1692, by using unfair and unconscionable means to collect the debt owed by the plaintiffs, including the collecting and attempting to collect of charges, fees and expenses not authorized by the original Loan as impacted by the Debtors' Chapter 13 Plan, Confirmation Order and Discharge Order, as more fully set forth above.

57.) Defendants violated the FDCPA, 15 U.S.C. § 1692, by misrepresenting the character, amount and legal status of the Plaintiffs' debt by alleging default.

58.) Defendants violated the FDCPA, 15 U.S.C. § 1692, by threatening to foreclose on the Plaintiffs' home even though Defendants have no present right to possession of the property under its mortgage securing the loan and by threatening to take other action prohibited by law.

59.) Defendants violated the FDCPA, 15 U.S.C. § 1692, by failing to accurately and fully state the amount of debt that is actually owed.

60.) Bank of New York Mellon and SLS reporting of erroneous information to the credit reporting agencies is a violation of the Fair Debt Reporting Act.

61.) The conduct by the defendants has also made it impossible for Debtors' to plan their financial future.

62.) Since actions complained of herein are continuing willful violations sanctions should be imposed for injury suffered by the Debtors as well as the costs and fees required to prosecute this action.

## COUNT II

### Willful Violation of Discharge Injunction

63.) The allegations of paragraph 1-61 above are realleged and incorporated herein by reference.

64.) After the entry of Order of Discharge under §1328(a) of the Bankruptcy Code, Defendants actions seeking to collect more than what the Plaintiffs owe is a violation of the Discharge Injunction under §524, of the Bankruptcy Code.

65.) In addition to the time and effort expended by the Plaintiffs in attempting to persuade Defendants to comply with this Court's Order of Discharge, the Plaintiffs have suffered anxiety, uncertainty and worry in not knowing the true balance of their indebtedness.

66.) This conduct by Defendants has also made it impossible for Debtors to plan their financial future.

67.) These actions by Defendants amount to a denial to the fresh start that the Debtors are entitled to under the Bankruptcy Code.

68.) In addition, Counsel to the Debtors has had to spend considerable time attempting to have Defendants comply with the Order of Discharge. The Defendants should also be compelled to reimburse counsel for his time and expense.

## COUNT III

### Willful Breach of Contract

69.) The allegations of paragraphs 1-67 above are realleged and incorporated herein by reference.

70.) Defendants breached their contractual obligations to the Plaintiffs in at least the following ways:

    a. By failing to apply all payments received from the Plaintiffs pursuant to the Loan Modification Agreement which was entered into by the parties and was allowed by the U.S. Bankruptcy Court, District of Massachusetts.

b. By collecting money from the Plaintiff's for interest and failing to report it to the Internal Revenue Property.

c. By declaring the Plaintiffs to be in default of the original loan when no such default exists.

d. By sending erroneous Mortgage Statements after the modification which demanded a higher payment of principal and interest than was agreed to in the modification which impacted the Plaintiffs' Chapter 13 Plan and payments.

## COUNT IV

### Unfair and Deceptive Trade Practices Under M.G.L. Ch. 93A

71.) The allegations of paragraph 1-70 above are realleged and incorporated herein by reference.

72.) Defendant's actions and its practices set forth herein violate the Massachusetts Unfair and Deceptive Trade Practices Act:

a. By deceptively claiming money is due which in fact is not owed.

b. By collecting money from the Plaintiff's for interest and failing to report it to the Internal Revenue Property.

c. By declaring the Plaintiffs to be in default of the original loan when no such default exists.

d. Each violation of the FDCPA detailed above also constitutes a violation of the 93A, each of which is subject to treble damages, attorney's fees, interest and costs.

## COUNT V

### Intentional Infliction of Emotional Distress

73.) The allegations of paragraphs 1-72 above are realleged and incorporated herein by

reference.

74.)   The Defendants caused the Plaintiffs to suffer stress, depression, fear and anxiety which has seriously affected their quality of life and caused them to lose sleep.

75.)   The Plaintiff, Valerie Robinson is in such fear of losing her home as a result of the Defendants threats to enter the home and change the locks on the doors if they believe the dwelling is vacant, that she cannot leave to visit her 90 year old mother in Alabama.

**WHEREFORE, for the reasons stated herein, the Plaintiffs respectfully request that this Court:**

**a.) Compel Defendants to comply with the Order of Discharge;**

**b.) Award treble the actual and compensatory damages, punitive damages and sanctions to Plaintiffs under Massachusetts General Laws Chapter 93A and FDCPA, 15 U.S.C. § 1692;**

**c.) Sanction the Defendants and award punitive damages pursuant to 11 U.S.C. § 105;**

**d.) Award Plaintiffs reasonable attorney's fees and litigation expenses, plus costs of suit;**

**e.) Declare the Mortgage to be null and void; and**

**f.) Award all other relief deemed right, just and equitable.**

April 21, 2016

Respectfully Submitted
Gregory Robinson and Valerie D.
Robinson by their Attorney

/s/ Patrick M. Culhane
Patrick M. Culhane, Esquire
BBO #628855
Law Office of Patrick M. Culhane
100 Grandview Road, Suite 304
Braintree, MA 02184
Tel: 781 848-3585
Fax: 781 780-7552
e-mail: pculhane@comcast.net